**MATTHEW ELIAS (026232)**
Matthew@EnaraLaw.com
**JOSEPH J. TOBONI (031385)**
Joseph@EnaraLaw.com
**Enara Law PLLC**
7631 East Greenway Road, Suite B-2
Scottsdale, Arizona 85260
Telephone: (602) 687-2010
Filings@EnaraLaw.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| First Way Transport, LLC, an Arizona limited liability company,<br><br>    Plaintiff,<br><br>  vs.<br><br>Rebel Auction Company, Inc., a Georgia corporation, Larry Davis and Jane Doe Davis, husband and wife, Brad Davis and Jane Doe Davis, husband and wife, and Does 1 through 10, inclusive,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**(Violation of The Clean Air Act, under 42 U.S.C. §7522(3)(A)(B); Breach of Contract; Breach of Implied Covenant of Good Faith and Fair Dealing; Fraudulent Misrepresentation; Negligent Misrepresentation; Rescission; Conversion; and Unjust Enrichment)** |

COMES NOW Plaintiff, First Way Transport, LLC, ("First Way") and for its Complaint against Defendants, hereby alleges as follows:

## PARTIES

1. Plaintiff First Way Transport, LLC ("First Way") is and was at all times relevant herein an Arizona limited liability company with its principal place of business in Santa Cruz County, State of Arizona.

2. Defendant Rebel Auction Company, Inc., ("Rebel"), is and was at all times relevant herein a Georgia corporation with its principal place of business in Jeff Davis County,

1

State of Georgia.

3.     Upon information and belief, Defendants Larry Davis and Jane Doe Davis, husband and wife, were at all times relevant herein, residents of Hazelhurst, Georgia, County of Jeff Davis, and any actions described herein were taken on behalf of the marital community.

4.     At all relevant times denoted herein, Larry Davis was the Chief Executive Officer (CEO) of Rebel Auction Company, Inc.

5.     Upon information and belief, Defendants Brad Davis and Jane Doe Davis, husband and wife, were at all times relevant herein, residents of Hazelhurst, Georgia, County of Jeff Davis, and any actions described herein were taken on behalf of the marital community.

6.     At all relevant times denoted herein, Brad Davis was the Chief Financial Officer (CFO) of Rebel Auction Company, Inc.

7.     Plaintiff is unaware at this time of the true names, capacities, or basis for liability of Defendants Does 1 through 10, inclusive, and therefore sues said Defendants by their fictitious names. Plaintiff will amend this complaint to allege their true names, capacities, or basis for liability when the same has been ascertained. Unless specifically referenced otherwise, reference to Rebel Auction Company, Inc., a Georgia corporation; Larry Davis and Jane Doe Davis, husband and wife; Brad Davis and Jane Doe Davis, husband and wife; and/or "Defendants" includes by reference Does 1 through 10 collectively.

**JURISDICTION AND VENUE**

8.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff's claims arise under the law of the United States of America.

9.     Jurisdiction is proper under 18 U.S.C. § 1965(b) as Defendants transacted their affairs within this judicial district as the Defendants targeted the District of Arizona when transacting business with the Plaintiff, an Arizona limited liability company organized within and under the jurisdiction and laws of Arizona, for the underlying sales transaction and vehicle

title transfers which were contracted with Plaintiff within the State of Arizona and therefore this District.

10.     Without limiting the generality of the foregoing, each Defendant, directly or through agents who were at the time acting with actual or apparent authority and within the scope of such authority, has: (a) Transacted business in Arizona; (b) Availed themselves intentionally of the benefits of doing business in Arizona; (c) Caused tortious damage by act or omission in Arizona; (d) Caused tortious damage in Arizona by acts or omissions committed outside such jurisdiction while (i) regularly doing business or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction; (e) Committed acts and omissions which Defendants knew or should have known would cause damage (and, in fact, did cause damage) in Arizona to Plaintiffs while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction; and (f) Otherwise had the requisite minimum contacts with the State of Arizona such that it is fair and reasonable to require Defendants to come to Court to defend this action.

11.     Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

## **GENERAL ALLEGATIONS**

12.     First Way Transport, LLC, is a member-managed LLC formed on January 5, 2018, by Jorge Franqui ("Jorge") and Sonia N. Gonzalez ("Sonia") for the purpose of transporting commodities such as fresh produce, refrigerated food, beverages, paper products, etc. throughout the United States.

13.     On or about April 14, 2023, First Way purchased from auction two tractor trailer, heavy duty trucks; a 2016 Kenworth W900 T/A Road Tractor assigned VIN

1XKWD49X4GR498994 with 480,000 miles, and a 2018 Kenworth W900L T/A Road Tractor assigned VIN 1XKW049X5JJ203228 with 512,862 miles for a total of $144,790.00 from Rebel Auction Company, Inc.

14.     Upon winning the bid for the auction, Sonia contacted Rebel requesting the wire information in order to make payment for the vehicles. The following day, April 18, 2023, Sonia received as email from Maria Caldwell with Rebel providing the requested wire information.

15.     On April 24, 2023, Jorge and his son traveled to Rebel to pick up the vehicles and decided to pay for the vehicles with a cashier's check instead of paying via wired funds.

16.     Upon providing the cashier's check to Rebel, Jorge received a "Paid in Full" invoice, number 49237.  *See* Paid in Full invoice number 49237 attached hereto as **Exhibit A**.

17.     Jorge and his son intended to drive the newly purchased tractors from the auction yard in Georgia back to Arizona, however, upon inspection found the condition of both Kenworth tractors to be very lacking and potentially unsafe in order to make that journey as various repairs were needed first.

18.     As a result, First Way arranged to have the Kenworth tractors shipped back to Arizona for an additional expense.  Sonia made some inquiries about shipping and, due to the size of the vehicles, needed to have the stacks on each tractor removed and placed inside each truck in order to afford the additional costs.

19.     Sonia posted her request to receive shipping quotes for the transportation of the vehicles from Georgia to Arizona through VeriTread, an online service designed to shop quotes for heavy freight and equipment.

20.     Fletes USA presented the best offer for delivering the tractors and was contracted to pick up both vehicles in Georgia and ship them back to Arizona for a total cost of $9,726.00. *See* Fletes USA, invoice number 845 dated July 17, 2023, attached hereto as

**Exhibit B**.

21.     Both tractors were picked up from Rebel by Luis Merida of Fletes USA on May 11, 2023, at 5:16 A.M. and were delivered to First Way on May 24, 2023, by 7:09 A.M., exactly one month following the in-full payment made for both vehicles.

22.     Following delivery of the vehicles to First Way, Jorge and Sonia had both tractors inspected by a mechanic who informed them that the Diesel Exhaust Fluid ("DEF"), had been removed from both tractors prior to their delivery to First Way.

23.     The Diest Exhaust Fluid device is an emissions control device that injects Diesel Exhaust Fluid periodically into the exhaust to convert nitrogen oxides in the exhaust into nitrogen and water in order to reduce emissions. It is against the Federal Clean Air Act to remove the DEF.

24.     According to CAA § 113(c)(2)(C), 42 U.S.C. § 7413(c)(2)(C), "It is a crime to knowingly falsify, tamper with, render inaccurate, or fail to install any "monitoring device or method" required under the CAA." *See* "Tampering & Aftermarket Defeat Devices" committee meeting report issued by the Environmental Protection Agency on April 25, 2019, attached hereto as **Exhibit C**.

25.     In addition to the deletion of the DEF devices being illegal in the United States, specific and expensive fines may be levied upon any person knowingly operating a vehicle where a DEF has been deleted ranging between $2,500.00 and $45,268.00 per vehicle.

26.     Nowhere in any of the information provided to First Way prior to their purchase of the tractors, or anywhere within the vehicles' descriptions on Rebel's website prior to the vehicles being placed up for action, was it disclosed in any way to any would-be buyers that the DEF emissions control devices had been removed from either vehicle. Had First Way known these devices had been removed, they never would have purchased either vehicle.

/ / /

27.     In addition to Rebel illegally selling vehicles with undisclosed deleted DEF emissions control systems, pursuant to Rebel's auction terms posted on their website, "Titles are not available on the sale day and will be mailed to purchaser approximately 10 business days after satisfactory settlement. No title will be available if vehicles are marked "No Title"." *See* screenshot of Rebel's website under "Terms" attached hereto as **Exhibit D**.

28.     Upon the terms stated on Rebel's website, the deadline for Rebel to provide the titles for both vehicles to First Way was on May 8, 2023.

29.     On June 15, 2023, after waiting for over a month past the expected delivery date for the vehicle titles, Sonia requested status from Rebel for when they could expect to receive the titles of the vehicles so they could get them registered and out for use.

30.     Sonia did not receive a response from Rebel, so she again reached out to Rebel on June 30, 2023, via telephone and spoke with a customer service representative regarding when they could expect to receive the titles to the vehicles. Sonia was advised by the representative that she would need to look into the matter and would contact her back regarding the status of the titles, however, she never did.

31.     Sonia reached out several more times to Rebel for status on delivery of the vehicle titles, each time being told that further investigations were required to find out what occurred, or not receiving any status at all.

32.     On July 10, 2023, two months after the titles should have been provided to First Way pursuant to Rebel's Terms, First Way contacted Rebel advising they wanted their money returned.  Without the titles, First Way was unable to title and register the vehicles, preventing them from being able to utilize said vehicles.

33.     The following day, Sonia contacted Rebel once again, this time speaking with "Lory" who advised there was nothing further Rebel could do for her.  Sonia again requested the money paid for the two vehicles be returned.

34.     When no additional contact was made, Sonia again contacted Rebel, this time speaking with "Maria". Maria advised Sonia she would contact the previous owner of the vehicles to see if he had the titles as Rebel was unable to locate them. Maria proceeded to inform Sonia that the previous owner lived in Florida and was traveling so she was uncertain if she would be able to reach him.

35.     Pursuant to Rebel's website, it states, among other things, "Titles must accompany all vehicles, trailers and equipment upon consignment and delivered to the office; Titles must be checked for any discrepancies. Should there be a lien on the vehicle, trailer or equipment, the lending institution must be contacted and a letter from such must be submitted to Rebel Auction Company, Inc., with a payoff figure and to whom to grant the funds; If the title isn't signed by the seller, a Limited Power of Attorney is to be signed for Rebel Auction Co., Inc. to handle all title work; and ALL VEHICLES, TRAILERS, AND EQUIPMENT NOT CONFORMING WITH THESE REQUIREMENTS WILL NOT BE SOLD." *See* screenshot of Rebel Auction Company's website regarding "Title" attached hereto as **Exhibit E**.

36.     On July 12, 2023, Sonia inquired with Maria about Rebel's title policy wanting to know how it could be that Rebel was not in possession of the titles to the vehicles to which Maria informed Sonia that if Rebel is unable to secure the original titles to the vehicles they sell, they will accept a copy. Sonia requested a copy of the title and was informed that Rebel did not have that either.

37.     On July 14, 2023, Sonia called Rebel again on two separate occasions, and spoke with Maria who informed her she had reached the previous owner of the vehicles. Maria stated that the previous owner was experiencing delays at the North Carolina Motor Vehicles Division, however he would be sending the titles to both tractors to Rebel overnight once acquired. Maria requested photographs texted to her of the titles, however received additional

excuses as to why that was not possible. Sonia once again requested the funds paid for both vehicles be returned in addition to the funds paid to have both tractors shipped to Arizona. Maria stated she would check with her boss.

38.     On July 17, 2023, Sonia called Rebel and spoke again with Maria and informed her she would be sending Maria the invoices for both of the vehicles purchased and the shipping invoice to have both tractors shipped to Arizona for a full refund.

39.     After numerous additional calls, Sonia called Rebel once again on July 19, 2023, this time speaking with "Ryan" who advised Sonia to deliver both tractors back to Georgia. Ryan advised that once the trucks were received back at the auction yard, First Way would be refunded for the trucks, the shipping from Georgia to Arizona, and the additional shipping to have the trucks returned to Georgia. Not trusting this, Sonia requested Rebel pay for the return shipping of the trucks back to Georgia, however Ryan denied this request. Ryan provided Sonia his cell phone number, however advised he would not be in Georgia when the trucks were received and to text him only once they were delivered as he would not accept any calls to that phone number.

40.     In addition to the loss of funds spent to purchase these vehicles and have them shipped from Georgia to Arizona, First Way has also suffered the loss of three months of business in not being able to utilize these vehicles at approximately $40,000.00 each month, or $120,000.00 total.

41.     Further, First Way had contracted for work with a third-party broker they were unable to fulfill due to not having the use of these vehicles causing lost wages, damage to their professional reputation, and the broker no longer willing do business with Frist Way due to their inability to fulfill their prior contract.

42.     During the time First Way has been in possession of both tractor trailers, they have been unable to use either of them due to the deleted emissions control systems and lack

of titles. It wasn't until July 24, 2023, three months after the purchase of the vehicles, when the first title for the 2018 Kenworth W900L T/A Road Tractor was received. *See* Title for 2018 Kenworth W900L attached hereto as **Exhibit F**.

43.    The second title for the 2016 Kenworth W900 T/A Road Tractor was not received by First Way until July 28, 2023. *See* Title for 2016 Kenworth W900 attached hereto as **Exhibit G**.

44.    However, even upon delivery of both titles to the vehicles three months late, First Way is still unable to utilize these vehicles for their business as they have both had the DEF emissions control systems removed, therefore rendering these vehicles unable to be registered and therefore useless to First Way Transport, LLC.

## COUNT ONE
### (Violation of The Clean Air Act, under 42 U.S.C. § 7522(3)(A)(B))

45.    Plaintiff hereby alleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

46.    Under 42 U.S.C. § 7522(3)(A) and (B), Prohibited Acts, it is stated that the following acts or causing of acts to occur are directly prohibited, …"(3)(A) for any person to remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter prior to its sale and delivery to the ultimate purchaser, or for any person knowingly to remove or render inoperative any such device or element of design after such sale and delivery to the ultimate purchaser; or"

47.    "(B) for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in

9

compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." United States Code, 2013 Edition, Title 42 - The Public Health and Welfare Chapter 85 - Air Pollution Prevention and Control Subchapter II - Emission Standards for Moving Sources, Part A - Motor Vehicle Emission and Fuel Standards Sec. 7522 - Prohibited acts.

48.     Rebel Auction Company, Inc. is in direct, willful, and knowing violation of the Federal Clean Air Act by either eliminating the DEF emissions control systems on both tractors prior to their sale to First Way, and/or by offering for sale and selling vehicles to First Way knowing or having reason to know that these emissions control devices had been removed.

49.     Rebel either knew or should have known these DEF emissions control devices had been removed from the vehicles prior to publishing them for sale on their website and therefore never should have offered them for sale.

50.     In doing so, First Way unknowingly purchased two tractor trailers for $144,790.00 and incurred additional expenses to have both vehicles shipped from Georgia to Arizona in the amount of $9,726.00 for vehicles they cannot register or use without the risk of heavy fines and in violation of Federal law.

51.     Due to the above acts and omissions perpetrated by Rebel, First Way suffered substantial damages by the loss of the funds paid for the vehicles, the shipping of said vehicles across the country, the loss of use of these vehicles for their business, the loss of professional reputation, and the loss of income and business already contracted for with a third-party broker.

52.     Rebel is in direct violation of The Clean Air Act, under 42 U.S.C. § 7522(3)(A)(B) and by doing so has substantially damaged and continues to damage Plaintiff.

## COUNT TWO
### (Breach of Contract)

53.   Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

54.   Under Arizona law, "To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." *Thomas v. Montelucia Villas LLC*, 232 Ariz. 92 (2013). "A valid contract requires an offer, acceptance of the offer, consideration, and the intent of both parties to be bound by the agreement." *Murphy v. Woomer*, 250 Ariz. 256 (App. 2020).

55.   Rebel and First Way entered into a valid and binding agreement for the sale and purchase of two tractor trailer heavy duty vehicles that Rebel was offering for sale via auction.

56.   That contract was secured when First Way's offer to purchase these vehicles was accepted through Rebel's auction house via their bid.

57.   Rebel breached that agreement when they failed to abide by their clearly stated title policy by not only ensuring they were in possession of both of the original titles prior to offering the vehicles for sale to the general public, but also by failing to provide said titles to First Way within ten (10) business days of the completion of the transaction with First Way.

58.   Rebel further breached the agreement when they failed to properly inspect both vehicles to ensure the emissions control systems were complete and in place and therefore legal to be sold within the United States prior to offering the vehicles for sale.

59.   Due to Rebel's multiple breaches of the agreement, First Way has suffered substantial damages by the loss of the funds paid for the vehicles, the shipping of said vehicles across the country, the loss of use of these vehicles for their business, the loss of professional reputation, and the loss of income and business already contracted for with a third-party broker in an amount to be determined at trial.

/ / /

60.     This action arises out of a contract; therefore, Plaintiff is entitled to recover their reasonable attorneys' fees pursuant to A.R.S. § 12-341.01 and costs pursuant to A.R.S. § 12-341.

## COUNT THREE
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

61.     Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

62.     The law implies a covenant of good faith and fair dealing in every contract. *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985); *see also* Restatement (Second) of Contracts § 205 (1981); 5 Williston on Contracts § 670 at 159 (3rd ed., Jaeger ed. 1961). The duty arises by virtue of a contractual relationship. The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship. *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. at 383, 710 P.2d at 1038.

63.     Plaintiff has a valid and binding contract with Defendants as a purchaser or buyer of the two tractor trailers being offered for sale through Rebel's auction house.

64.     Defendants breached their duty to Plaintiff by failing to abide by their clearly stated title policy by not only ensuring they were in possession of both of the original titles prior to offering the vehicles for sale to the general public, and also by failing to provide said titles to First Way within ten (10) business days of the completion of the transaction with First Way.

65.     Defendants further breached the agreement when they failed to properly inspect both vehicles to ensure their emissions control systems were complete and in place and therefore legal to be sold within the United States prior to offering the vehicles for sale.

/ / /

66.     Defendants' multiple failures to perform under the terms of the Contract entered into with Plaintiff have diminished Plaintiff's ability to receive the benefit of the vehicles purchased for their business, diminished Plaintiff's ability to earn an income, and has damaged their business reputation with their third-party broker.

67.     Plaintiff had been damaged in an amount to be determined at trial.

## COUNT FOUR
**(Fraudulent Misrepresentation)**

68.     Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

69.     "Fraudulent misrepresentation or concealment can, under certain circumstances, constitute 'improper conduct' for purposes of the intentional interference tort." *Safeway Ins. Co., Inc. v. Guerrero*, 210 Ariz. 5, 13, ¶ 28, 106 P.3d 1020, 1028 (2005). "[I]ntent is shown by proving that the interferer either intended or knew that a particular result was substantially certain to be produced by its conduct." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 494, 38 P.3d 12, 32 (2002).

70.     "Whether a particular action is improper is determined by a consideration of seven factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of the actions of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties." *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. at 387, 710 P.2d at 1042 (citing RESTATEMENT (SECOND) OF TORTS § 767 (1979)).

/ / /

71.     Defendants falsely represented to Plaintiff that, "Titles must accompany all vehicles, trailers and equipment upon consignment and delivered to the office" as is stated on Defendants' website, however Defendants failed to properly secure the original titles for either of the Kenworth tractor trailers they offered for sale and eventually sold to First Way.

72.     Defendants falsely represented to Plaintiff that, "Titles are not available on the sale day and will be mailed to purchaser approximately 10 business days after satisfactory settlement.  No title will be available if vehicles are marked "No Title", however Defendants did not send either title to Plaintiff until three months after the purchase of these vehicles, preventing them from being able to title and register the vehicles for their business use and professional services they had already previously contract for through a third-party broker.

73.     Additionally, Defendants falsely represented to Plaintiff that these vehicles were legally operational within the United States when they offered them for sale, knowing they were not legally allowed to offer vehicles for sale that have had any tampering with the vehicle's emissions control systems as provided for by the Environmental Protection Agency.

74.     Plaintiff reasonably relied on Defendants' multiple representations in offering funds for purchase of these vehicles and in securing transportation of these vehicles from Georgia to Arizona and had no reason to suspect Defendants' representations were false when made.

75.     As a direct and proximate result of Defendants' multiple fraudulent misrepresentations, Plaintiff was and continues to be severely damaged in an amount to be determined at trial.

## COUNT FIVE
### (Negligent Misrepresentation)

76.     Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

77.     To succeed on a claim for negligent misrepresentation, a plaintiff must prove, (1) the existence of a duty of care based on a "special relationship" between the representor and the representee; (2) the representation in question was untrue, inaccurate, or misleading; (3) the representor acted negligently in making the misrepresentation; (4) the representee relied in a reasonable manner on the misrepresentation; and (5) the reliance was detrimental to the representee in the sense that damages resulted from that reliance.

78.     Defendants falsely represented to Plaintiff that, "Titles are not available on the sale day and will be mailed to purchaser approximately 10 business days after satisfactory settlement. No title will be available if vehicles are marked "No Title", however Defendants did not send either title to Plaintiff until three months after the purchase of these vehicles, preventing them from being able to title and register the vehicles for their business use and professional services they had already previously contract for through a third-party broker.

79.     Defendants further falsely represented to Plaintiff that these vehicles were legally operational within the United States when they offered them for sale, knowing or having reason to know that they were not legally allowed to offer vehicles for sale that have had any tampering with the vehicle's emissions control systems as provided for by the Environmental Protection Agency.

80.     Defendants were aware that these representations were false when made and knew then to be false when made.

81.     Defendants were aware that these misrepresentations were material when made.

82.     Defendants intended for Plaintiff to rely on these materially false representations in order to induce their assent into the Contract.

83.     Plaintiff reasonably relied on the materially false representations of Defendants in agreeing to their Contract and had no reason to suspect that Defendants' representations were false.

84.    Plaintiff was and continues to be severely financially damaged by Defendants in an amount to be determined at trial.

## COUNT SIX
### (Rescission)

85.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

86.    A "claim for rescission, as opposed to a claim for damages, may be granted when 'innocent' as well as fraudulent misrepresentations are made, and that accordingly, proof of each of the nine elements of actionable fraud is not essential in a rescission action." *Lehnhardt v. City of Phoenix*, 105 Ariz. 142, 144, 460 P.2d 637, 639 (1969).

87.    "In the law of contracts, it seems to be the rule that where there is an entire, or even a substantial, failure of the consideration, the contract may be rescinded. The contract may also be rescinded and terminated where the failure of consideration results from impossibility of performance or by impossibility of performance alone. . . . It is undoubtedly the rule that where rescission is sought, the party wishing to rescind must place the opposite party in status quo." *Fish v. Valley Nat'l. Bank of Phoenix*, 64 Ariz. 164, 171-172, 167 P.2d 107, 112 (1946).

88.    "Rescission and reformation are claims that seek relief based on fraud or mistake. Such claims do not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Long v. City of Glendale*, 208 Ariz. 319, 326, 93 P.3d 519, 526 (App. Div. 1 2004) (internal quotation omitted).

89.    Defendants falsely represented to Plaintiff that, "Titles are not available on the sale day and will be mailed to purchaser approximately 10 business days after satisfactory settlement.  No title will be available if vehicles are marked "No Title", however Defendants did not send either title to Plaintiff until three months after the purchase of these vehicles,

preventing them from being able to title and register the vehicles for their business use and professional services they had already previously contract for through a third-party broker.

90.    Defendants further falsely represented to Plaintiff that these vehicles were legally operational within the United States when they offered them for sale, knowing they were not legally allowed to offer vehicles for sale that have had any tampering with the vehicle's emissions control systems as provided for by the Environmental Protection Agency.

91.    However, even if Defendants would have abided by their stated Title policies on their website and would have delivered the titles to both vehicles to Plaintiff timely, Plaintiff still would not have been able to title, register, or use the vehicles purchased as Defendants failed to properly inspect the vehicles to ensure they were legal to be sold, titled, registered, and used within the United States.

92.    Defendants further failed to properly disclose that the DEF emissions control systems in each Kenworth tractor trailer had been removed rendering them unable to be operated in any capacity within the United States prior to selling these vehicles to Plaintiff.

93.    Defendants were aware that these misrepresentations were material when made.

94.    Defendants intended for Plaintiff to rely on these materially false representations in order to induce their assent into the Contract.

95.    Plaintiff reasonably relied on the materially false representations of Defendants in agreeing to their Contract and had no reason to suspect that Defendants' representations were false.

96.    Plaintiff never would have entered into this Contract had these matters of material fact been known prior to purchasing these vehicles and therefore this Court respectfully should enter an order rescinding this Contract in its entirety.

///

///

## COUNT SEVEN
### (Conversion)

97.   Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

98.   The elements of Conversion are well established and include: (1) the plaintiff's ownership or right to possession of the property; (2) defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; (3) and damages to the Plaintiff.

99.   Plaintiff has a claim to ownership of the property contracted for as offered for sale by Defendants via their auction house advertisement for the two Kenworth tractor trailers purchased by Plaintiff.

100.   The vehicles described by Defendants on their auction house website were not the vehicles that were delivered to Plaintiff as Plaintiff had a reasonable expectation to receive vehicles that were legally operational within the United States.

101.   Due to the DEF emissions control systems having been removed from both vehicles prior to Plaintiff's purchase, Plaintiff is not able to use or derive the benefit expected from the ownership of the vehicles.

102.   As such, Plaintiff should be returned the funds paid for the vehicles as the vehicles purchased were not the vehicles advertised or delivered to Plaintiff by Defendants.

103.   Defendants received and have wrongfully failed to relinquish the funds paid for these vehicles back to Plaintiff as they advised Plaintiff they would do.

104.   Defendants have no reasonable explanation for failing to deliver the Plaintiff's property.

105.   Plaintiff continues to be harmed by the continual deprivation of the return of their funds as agreed to.

106.   Plaintiff has been damaged in an amount to be determined at trial.

/ / /

## COUNT EIGHT
### (Unjust Enrichment)

107.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

108.    "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." To claim unjust enrichment, "a plaintiff must show (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy at law." *Span v. Maricopa Cty. Treasurer*, 246 Ariz. 222, 227 (App. 2019).

109.    As a result of the breaches by and wrongful acts of Defendants, they have been unjustly enriched at the expense of Plaintiff. Defendants have derived and retained benefits obtained at the expense of Plaintiff.

110.    Plaintiff paid $144,790.00 for two Kenworth tractor trailers under the reasonable belief they would be able to title, register, and use these vehicles in furtherance of their business and income earning abilities.

111.    Defendants were notified of their fraudulent misrepresentations and have agreed to return Plaintiff's funds for the purchase of these vehicles to them, however, have failed to do so.

112.    Defendants have no reasonable explanation for failing to repay Plaintiff as agreed to.

113.    Defendants are under an obligation to repay Plaintiff forthwith all amounts by which they have been unjustly enriched, in an amount to be determined at trial.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

WHEREFORE, Plaintiff First Way Transport, LLC, hereby prays for judgment against Rebel Auction Company, Inc., a Georgia corporation; Larry Davis and Jane Doe Davis, husband and wife; Brad Davis and Jane Doe Davis, husband and wife; and DOES 1 through 10, inclusive as follows:

A.    For compensatory damages in an amount to be proven at trial;

B.    For consequential damages in an amount to be proven at trial;

C.    For the funds spent in having the vehicles delivered from Georgia to Arizona of at least $9,726.00, in an amount to be proven at trial;

D.    For pre-judgment and post-judgment interest on the foregoing sum at the highest rate permitted by law;

E.    For punitive damages in an amount sufficient to punish Defendants for their wrongful conduct and to deter others from engaging in similar misconduct in the future;

F.    For treble damages pursuant to 18 U.S.C. § 1964(c);

G.    For costs incurred in bringing this action pursuant to A.R.S. § 12-341;

H.    For reasonable attorneys' fees pursuant to A.R.S. § 12-341.01 or where otherwise allowed by law; and

I.    For all other relief that this Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 21st day of August 2023.


**ENARA LAW PLLC**

By: /s/ *Matthew Elias*
     Matthew Elias
     Joseph J. Toboni
     Attorneys for Plaintiff

**ORIGINAL** of the foregoing e-filed
within the Arizona District Court
this 21st day of August 2023.


By: _/s/ Shelly N. Witgen, ACP_____