**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| First Way Transport LLC, | No. CV-23-00393-TUC-SHR |
| Plaintiff, | **Order Re: Motion to Dismiss** |
| v. | |
| Rebel Auction Company Incorporated, et al., | |
| Defendants. | |

Pending before the Court is a Motion to Dismiss filed by Defendants Rebel Auction Company, Inc., Larry Davis, and Brad Davis (collectively, "Defendants," or individually by their names). This matter has been fully briefed, and Plaintiff, First Way Transport, LLC, has requested additional limited discovery in its Response. (Docs. 12, 13 at 5, 16.) For the following reasons, the Court will grant Defendants' Motion and deny Plaintiff's request for discovery.[1]

**I.  Background**

Plaintiff is "an Arizona limited liability company with its principal place of business in Santa Cruz County, State of Arizona." (Doc. 1 ¶ 1.) Defendant Rebel Auction Company, Inc. ("Rebel") is "a Georgia corporation with its principal place of business in Jeff Davis County, State of Georgia." (*Id.* ¶ 2.) Defendants Larry Davis and Brad Davis

---

[1] Although Defendants requested oral argument, the Court declines because oral argument will not aid in resolution of the issues raised. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court.").

are residents of Hazelhurst, Georgia, County of Jeff Davis. (*Id.* ¶¶ 3, 5.) Defendant Larry Davis is the Chief Executive Officer of Rebel. (*Id.* ¶ 4.) Defendant Brad Davis is the Chief Financial Officer of Rebel. (*Id.* ¶ 6.)

Plaintiff alleges it purchased two tractor trailer trucks (the "vehicles") from Rebel on April 14, 2023. (*Id.* ¶ 13.) Shortly after, Plaintiff's agent traveled to Georgia, paid for the vehicles in full, and then paid an independent company to ship the vehicles from Georgia to Arizona. (*Id.* ¶¶ 18, 20.) Following delivery, Plaintiff alleges it had "both [vehicles] inspected by a mechanic who [found] that the Diesel Exhaust Fluid (DEF) had been removed from both [vehicles] prior to their delivery to First Way." (*Id.* ¶ 22.) Plaintiff alleges Defendants failed to disclose this information to them, and the sale of the vehicles without their DEFs violated federal law. (*Id.* ¶¶ 24–26.) In addition, Plaintiff alleges Defendants did not send it the titles for both vehicles until three months after the finalized sale, in contravention of Rebel's website terms. (*Id.* ¶¶ 27–28, 42–43.)

In response to Plaintiff's Complaint, Defendants filed the motion to dismiss for lack of personal jurisdiction. (Doc 12.)

## II. Legal Standard

When opposing a motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of establishing . . . jurisdiction is proper." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). When the district court does not conduct an evidentiary hearing,[2] "the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). In these instances, the Court takes the "uncontroverted allegations in the complaint" as true and resolves conflicts in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800; *Boschetto*, 539 F.3d at 1015 (citation omitted). Further, the Court, in its discretion, "may order discovery on . . . jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted).

---

[2] Neither party has requested an evidentiary hearing. (*See generally* Docs. 12, 13.)

Where "there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374 F.3d at 800 (citing Fed. R. Civ. P. 4(k)(1)(A)). "The Arizona long-arm statute provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997); *see also* Ariz. R. Civ. P. 4.2(a). Therefore, "the jurisdictional analyses under state law and federal due process are the same." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1089 (9th Cir. 2023) (quoting *Schwarzenegger*, 374 F.3d at 800–01), *cert. denied*, 144 S. Ct. 693 (2024) (mem.).

Under the Fourteenth Amendment's Due Process Clause, "a tribunal's authority depends on the defendant[] having such 'contacts' with the forum State [to ensure] 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). There are two types of personal jurisdiction: general and specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).

General jurisdiction exists over a nonresident defendant when the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Schwarzenegger*, 374 F.3d at 801. To decide whether a defendant has the requisite contacts, the Ninth Circuit considers the contact's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the [forum] state's regulatory or economic markets." *Mavrix Photo, Inc.*, 647 F.3d at 1224 (citation omitted).

Alternatively, "specific jurisdiction covers defendants . . . less intimately connected with a state, but [who] have sufficient minimum contacts with the state . . . relevant to the lawsuit." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v.*

*Fiore*, 571 U.S. 277, 283–84 (2014) (citation and internal quotation marks omitted). The Ninth Circuit has implemented a three-prong test to determine if a court has specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Herbal Brands,* 72 F.4th at 1090 (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden of proving the first two prongs, and, if the plaintiff meets its burden, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation marks omitted) (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017)).

A plaintiff can prove the first prong by showing either "purposeful availment" or "purposeful direction." *Id.* Although the Ninth Circuit typically applies purposeful direction analyses to intentional tort claims and purposeful availment analyses to contract and unintentional tort claims, there is no "rigid dividing line between these two types of claims." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (citation omitted), *cert. denied*, 144 S. Ct. 826 (2024) (mem.). Rather, "the first prong 'may be satisfied by purposeful availment,' 'by purposeful direction,' or 'by some combination thereof.'" *Id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)).

**III.   Analysis[3]**

As detailed below, the Court finds it lacks specific personal jurisdiction because Defendants do not have the requisite contacts with the District of Arizona to satisfy the

---

[3] The analysis does not address general jurisdiction because Plaintiff concedes the Court lacks general personal jurisdiction. (Doc. 13 at 3.)

- 4 -

first prong of the *Herbal Brands* test. This Court lacks specific personal jurisdiction because Plaintiff failed to allege facts indicating Defendants purposefully availed themselves of Arizona's laws or purposefully directed their business activities towards Arizona. Moreover, the Court will deny Plaintiff's request to conduct jurisdictional discovery because its allegations are too speculative. However, the Court will grant Plaintiff leave to amend.

A. Specific Personal Jurisdiction

Plaintiff's Complaint alleges this Court has specific personal jurisdiction over Defendants because they contracted to sell two vehicles to an Arizona company. (Doc. 1 ¶¶ 9, 13.) Plaintiff also generally alleges Defendants intentionally availed themselves of the benefits of doing business in Arizona by transacting business in Arizona, regularly doing business in Arizona, and engaging in persistent courses of conduct within Arizona. (*Id.* ¶ 10.)

In their Motion to Dismiss, Defendants challenge Plaintiff's allegations. (*See generally* Doc. 12.) Larry Davis and Brad Davis deny any involvement in Rebel's transaction with Plaintiff and generally deny seeking out or doing business in Arizona. (*Id.* at 7, Doc. 12-1 ¶ 4, Doc. 12-3 ¶ 4.) Likewise, Rebel denies seeking out or doing business in Arizona and having officers, agents, or employees there. (Doc. 12 at 7–8.) Rebel also asserts its "only contacts in connection with this sale consisted of First Way Transport's purchase of the two vehicles from auction, which occurred in Georgia, Rebel employees['] telephone conversations with First Way [representative], which [representative] initiated, and Rebel's mailing the invoice to First Way Transport in Arizona." (*Id.* at 7.) Rebel also asserts "[t]here was no formal written contract between [P]laintiff and Rebel" and "Rebel's auction terms state the sale was 'as is, where is,' indicating Rebel's desire not to be responsible for the [vehicles] after the sale." (*Id.* at 8.) Rebel admits to maintaining "a universally accessible website" but argues its "passive website does not advertise third-party business in Arizona and does not target Arizona." (*Id.*)

Rather than dispute Defendants' course of business with Arizona or involvement in

the transaction with Plaintiff, Plaintiff generally argues Rebel conducts business across the country in its Response. (Doc. 13 at 4–5.) Plaintiff asserts "Rebel is an auction company that sells a large number of vehicles. . . . [So] it is safe to assume that Rebel routinely accepts bids from prospective buyers outside of Georgia . . . [and] routinely sells to buyers outside of Georgia." (*Id.* at 4.) Plaintiff also points to Rebel's "website and business model that markets and accepts business from buyers across the country." (*Id.* at 4–5.) The nature of Rebel's business and website, Plaintiff argues, shows "Rebel was not conducting a single isolated sale in this matter; rather, Rebel was operating its normal course of business in accepting bids and making a sale to a buyer outside of Georgia." (*Id.* at 5.)

As a threshold matter, Plaintiff fails to even attempt to make a prima facie case for personal jurisdiction over Defendants Larry Davis and Brad Davis. Plaintiff lumps Defendants together when discussing jurisdictional facts. (*See generally* Docs. 1, 13.) When discussing individual Defendants, Plaintiff merely alleges "Larry Davis was the Chief Executive Officer (CEO) of Rebel Auction Company, Inc." and "Brad Davis was the Chief Financial Officer (CFO) of Rebel Auction Company, Inc." (Doc. 1 ¶¶ 4, 6.) Yet Plaintiff does not assert Defendants Larry Davis and Brad Davis had any direct involvement in the sale between Rebel and First Way. Defendants specifically controvert Plaintiff's generic assertions by providing affidavits from Larry and Brad Davis, which indicate they were not involved at all in the sale of the two vehicles, never spoke to Plaintiff, and never traveled to Arizona. (Doc. 12 at 7.) Plaintiff did not refute these specific denials in its response. (*See generally* Doc. 13.) Accordingly, the Court will dismiss Defendants Larry Davis and Brad Davis because Plaintiff has failed to prove they purposefully directed their activities towards Arizona or purposefully availed themselves of the privilege of conducting business in Arizona. Thus, the Court will focus the discussion below only on Rebel's characteristics and actions.

    *a. Purposeful Availment*

The purposeful availment analysis typically involves showing a defendant deliberately "engaged in significant activities within a State or has created 'continuing

obligations' between [itself] and the residents of the forum." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)). At a minimum, the party seeking to enforce jurisdiction in the forum state must show "the defendant deliberately 'reached out beyond' its home" and "avail[ed] itself of the privilege of conducting activities within the forum state." *Ford*, 592 U.S. at 359 (citations omitted). Such a showing "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802.

However, "an individual's contract with an out-of-state party alone" cannot subject the individual to the jurisdiction of the other party's home state. *Burger King*, 471 U.S. at 478 (emphasis omitted). Instead, the court must consider whether the contract creates "'continuing obligations' between [the defendant] and residents of the forum." *Id.* at 476 (citation omitted). If a nonresident's contract with a forum resident does not create any ongoing obligations, purposeful availment does not exist. *Boschetto*, 539 F.3d at 1017.

The Ninth Circuit's decision in *Boschetto v. Hansing* is particularly on point here. *Id.* In *Boschetto*, the Ninth Circuit found a single contract for the sale of a car at auction on eBay did not create a substantial connection to California under the purposeful availment test. *Id.* There, the plaintiff purchased a vehicle on a third-party auction site, with the vehicle and seller located out of state, and the plaintiff independently arranged for the vehicle's transport to his state. *Id.* at 1014. After this, the transaction was complete (i.e., it was "a one-shot affair"). *Id.* at 1015, 1017 (citation omitted). Relying upon the "limited nature of the transaction," the court found the contract did not create continuing obligations and failed the purposeful availment test. *Id.* at 1017.

Here, Plaintiff similarly fails the purposeful availment test because "the lone transaction for the sale of [two items] does not establish" Rebel purposefully availed itself of "the privilege of doing business in [Arizona]." *Id.* The transaction between Rebel and First Way for the sale of the two vehicles was primarily a contract for the sale of goods, which is insufficient alone to create a substantial connection between Defendants and

Arizona. Rebel did not create any significant continuing obligations to First Way. (*See generally* Doc. 1 and Doc. 13.) While Rebel's website states titles will be shipped to buyers after the auction, this one obligation to ship a title to the buyer's state is incidental to the overall nature of the transaction and is not "continuing." Instead, the thrust of the purchase was for vehicles "as is, where is," and the parties were to go their separate ways once the sale of the vehicles was finalized and the titles were sent. (Doc. 12 at 8.) Additionally, execution of the contract did not require Defendants to engage in substantial business, if any business, in Arizona. Plaintiff's own allegations show Plaintiff's representatives traveled to Georgia to pay for the vehicles and Plaintiff arranged to have both tractors transported to Arizona via a third party. (Doc. 1 ¶¶ 15, 17–18, 20.) This transaction was "a one-shot affair." *Boschetto*, 539 F.3d at 1017 (citation omitted).

Although Plaintiff alleges this case is distinguishable from *Boschetto*, this Court disagrees. (*See* Doc. 13 at 4.) Rebel's identity as an auction company is not enough to create a substantial connection between Rebel and Arizona or demonstrate continuing obligations between Rebel and Plaintiff. Plaintiff provides no evidence Defendant Rebel intentionally engaged in significant activities or created continuing obligations with the state of Arizona. Instead, Plaintiff alleges Defendant Rebel regularly accepted bids and made sales to buyers outside of Georgia. (*Id.*) At most, this allegation shows contacts with the various states generally, not Arizona specifically. Accordingly, the Court finds Plaintiff has failed to show Defendant Rebel purposely availed itself of Arizona's jurisdiction.

### b. *Purposeful Direction*

Purposeful direction is evaluated under the following three-part "effects" test: "the defendant must have allegedly '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Davis*, 71 F.4th at 1162–63 (quoting *Schwarzenegger*, 374 F.3d at 803) (internal citation omitted). The test centers on the defendant's actions, not a third party's, and requires the defendant to specifically target the forum state. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017). Further, the test "focuses on the forum in which the

defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Herbal Brands,* 72 F.4th at 1091 (quoting *Mavrix Photo, Inc.*, 647 F.3d at 1228). Accordingly, internet activity, when "expressly aimed" at the forum state, can constitute purposeful direction. *Id.*

Plaintiff argues Defendant Rebel has minimum contacts with Arizona because it is an auction company with a website that "markets and accepts business from buyers across the country." (Doc. 13 at 5.) This Court disagrees. While Plaintiff satisfies the first and, arguably, third elements of the test, it fails on the second element. Rebel acted intentionally when selling the two vehicles to First Way at auction. Further, First Way informed Rebel the sale caused First Way harm through multiple phone calls with Rebel agents regarding the lack of title and DEFs for the vehicles. However, First Way has failed to show Rebel "expressly aimed" its conduct at the forum state.

Plaintiff first argues because Rebel is an auction company, "it is safe to assume" Rebel regularly sells large numbers of vehicles to out of state buyers. (Doc. 13 at 4.) However, Plaintiff cites no authority for this bold proposition. Because of this, though, Plaintiff alleges, "Rebel was operating its normal course of business in accepting bids and making a sale to a buyer outside of Georgia." (*Id.* at 5.) Plaintiff fails to show or even argue Rebel has contacts with Arizona specifically. Rather, Plaintiff has, at most, alleged Rebel's Georgia-based auctions are open to buyers from any state via third-party online bidding sites. This is not enough to show Rebel "expressly aimed" its business at Arizona.

Plaintiff next points to Rebel's "website and business model that markets and accepts business from buyers across the country." (Doc. 13 at 4–5.) A website must exhibit particular characteristics to constitute "express aiming." *See Herbal Brands*, 72 F.4th at 1091–92. To start, there is "a distinction between 'passive' websites that merely make information available to visitors and 'interactive' websites, where 'users can exchange information with the host computer . . . .'" *Id.* at 1091 (citation omitted). For a website to constitute "express aiming," the website must not only be interactive but also "something more." *Id.* at 1092 (citation omitted). "When the website itself is the only jurisdictional

contact, our analysis turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Id.* Alternatively, "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum." *Id.* at 1093.

Here, it is clear Rebel sold two physical items, the vehicles, to Plaintiff. However, Plaintiff has failed to show, or even allege, Rebel's website is interactive. Moreover, Plaintiff failed to describe the website aside from quoting the terms on the website relevant to its claims. While Rebel admits to maintaining "a universally accessible website," the company describes its website as "passive," and Plaintiff does not specifically controvert this statement. (Doc. 12 at 8; *see also* Doc. 13 at 4.) While Plaintiff appears to argue Rebel regularly used its website to "accept[] bids and mak[e] a sale to a buyer outside of Georgia," (Doc. 13 at 5), online bidding does not occur on Rebel's website, but "through third-party facilitators, EquipmentFacts and Proxibid." (Doc. 12 at 2.) Therefore, Rebel did not "expressly aim" its business at Arizona.

B. Plaintiff's Request for Limited Discovery

This Court denies Plaintiff's "request . . . to conduct additional discovery to determine the number of prior sales Rebel has made to buyers in Arizona." (Doc. 13 at 5.) The district court has broad discretion to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see Boschetto*, 539 F.3d at 1020. "[A] mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023) (citation omitted). Here, Plaintiff's allegations are speculative at best, and Plaintiff has failed to explain how determining the number of prior sales Rebel made to buyers in Arizona would provide support for its personal jurisdiction argument. Accordingly, this Court denies Plaintiff's request for discovery.

C. Leave to Amend

Plaintiff did not request leave to amend, and Defendants did not address this issue in their pleadings. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court must give leave to amend "freely . . . when justice so requires." "This policy is 'to be applied with extreme liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Therefore, the Court must grant leave to amend unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

The Court will grant Plaintiff leave to amend. The Court is not convinced leave to amend would prejudice Defendants, be in bad faith, produce an undue delay in litigation, or be futile at this point. Although the Court doubts Plaintiff will be able to plead sufficient facts to maintain this suit in Arizona, the Court could stretch to envision some set of factual allegations by which Plaintiff could cure the deficiencies outlined above. Moreover, because the Court does not want to speculate in the absence of any arguments from the parties regarding these factors and in the presence of an extreme liberality standard, the Court will give Plaintiff this one chance to cure its jurisdictional deficiencies. However, Plaintiff should strongly consider filing its suit in the Southern District of Georgia.

**IV. Conclusion**

For the reasons outlined above,

**IT IS ORDERED** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 12) is **GRANTED.**

**IT IS FURTHER ORDERED** Plaintiff's request to conduct additional discovery is **DENIED**.

. . . .

. . . .

. . . .

- 11 -

**IT IS FURTHER ORDERED** Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.  Plaintiff may file an amended complaint, adding allegations only with respect to this **personal jurisdiction** issue, on or before **Monday, July 8, 2024**, if it can allege facts sufficient to establish jurisdiction.

**IT IS FURTHER ORDERED**, if Plaintiff does not file an amended complaint by **Monday, July 8, 2024**, the Clerk of Court shall enter a judgment of dismissal **without prejudice** and close the case.

Dated this 6th day of June, 2024.

Honorable Scott H. Rash
United States District Judge